**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| SENECA INSURANCE COMPANY, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR** **DECLARATORY JUDGMENT** |
| FAYETTEVILLE CROSS CREEK, LLC and BLUE RIDGE PROPERTY MANAGEMENT, LLC | ) ) ) ) ) | **C.A. No. 19-CV-1209** |
| Defendants. | ) | |

COMES NOW Plaintiff Seneca Insurance Company, Inc. ("Plaintiff" or "Seneca"), by and through its undersigned counsel, pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 2201, and Rules 8 and 57 of the Federal Rules of Civil Procedure, and states as follows for its Complaint for Declaratory Judgment against Defendants Fayetteville Cross Creek, LLC ("Cross Creek") and Blue Ridge Property Management, LLC ("Blue Ridge") (collectively, "Defendants"):

**INTRODUCTION**

1.     This is an action for declaratory judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C §2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist among Seneca and the Defendants arising out of a civil action captioned *Elizabeth McMillan and Tiffany Scott v. Blue Ridge Companies, Inc., Blue Ridge Property Management, LLC, BRC Cross Creek, LLC d/b/a Legacy at Cross Creek, and Fayetteville Cross Creek, LLC d/b/a Legacy at Cross Creek*, Civil Action Number 18-CVS-4991 (the "Underlying Action"), that is presently pending against the Defendants in the General Court of Justice, Superior Court Division, of Cumberland County, North Carolina.

## THE PARTIES

1.    Plaintiff Seneca is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.   Seneca submits itself to the jurisdiction of this Court.

2.    Upon information and belief, Defendant Fayetteville Cross Creek, LLC is a limited liability company organized under the laws of the State of North Carolina with its principal place of business located at 5826 Samet Drive, Suite 105, High Point, North Carolina, 27265 whose members are residents of North Carolina.  Cross Creek may be served with process by delivering a copy of the Summons and Complaint to its registered agent for service of process, Desmond G. Sheridan, 804 Green Valley Road, Suite 200, Greensboro, North Carolina 27408.

3.    Upon information and belief, Defendant Blue Ridge Property Management, LLC is a limited liability company organized under the laws of the State of North Carolina with its principal place of business located at 5826 Samet Drive, Suite 105, High Point, North Carolina, 27265, whose members are residents of North Carolina.  Blue Ridge may be served with process by delivering a copy of the Summons and Complaint to its registered agent for service of process, Desmond G. Sheridan, 804 Green Valley Road, Suite 200, Greensboro, North Carolina 27408.

## JURISDICTION

4.    This Court has original jurisdiction over this action under 28 U.S.C §1332 in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## VENUE

5.    The venue of this action is properly predicated on 28 U.S.C §1391 in that jurisdiction is founded on diversity of citizenship and this action is brought within a judicial district

and division in which the Defendants reside or are subject to the Court's personal jurisdiction and in which Seneca issued the Policy to which this Complaint for declaratory relief pertains.

## STATEMENT OF FACTS

6.     Seneca issued a Commercial Protection policy to Fayetteville Cross Creek, LLC, including a Commercial General Liability ("CGL") Coverage Part bearing Policy Number CMP 4901214, for the Policy Period of January 15, 2018, to January 15, 2019, to Named Insured Fayetteville Cross Creek, LLC (the "Policy"). A true and complete copy of the Policy is attached hereto as **EXHIBIT A** and is incorporated herein by reference as if fully restated herein.

7.     The CGL Coverage Part of the Policy is subject to a limit of liability of $1,000,000.00 with respect to Personal & Advertising Injury for any one person or organization, and a $2,000,000.00 General Aggregate Limit, subject to the terms, conditions, limitations, exclusions, definitions, and all other provisions of the Policy. (*See* Exhibit A, Commercial General Liability Declarations, Form No. CG DS 01 10 01.)

8.     On July 16, 2018, Elizabeth McMillan and Tiffany Scott, on behalf of themselves and a purported class (the "Underlying Plaintiffs"), filed the Underlying Action. A true and accurate copy of the Complaint in the Underlying Action, and all exhibits attached thereto (the "Underlying Complaint"), is attached hereto as **EXHIBIT B** and is incorporated herein by reference as if fully restated herein.

9.     The Underlying Complaint (Exhibit B) alleges that Cross Creek and Blue Ridge, among other defendants, are liable to the Underlying Plaintiffs for claims arising out of the North Carolina Residential Rental Agreements Act, N.C.G.S. § 42-46 (First and Second Causes of Action), the North Carolina Debt Collection Act, N.C.G.S. § 75-50, *et seq.* (Third Cause of Action), and the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1, *et*

*seq.* (Fourth Cause of Action). The Underlying Complaint also contains claims for a Petition for Injunction, N.C.G.S. § 1-485, *et seq.* (Fifth Cause of Action), and a Petition for Declaratory Judgement, N.C.G.S. § 1-253, *et seq.* (Sixth Cause of Action).

10.    The Underlying Complaint alleges that the Defendants engaged in "unlawful and unfair debt collection practices" through their "attempts to collect upon fees, penalties, and other improper charges, when such costs, fees, charges, and amounts are not owed and [are] expressly prohibited." (*Id.* at ¶ 1.)

11.    The Defendants are alleged to have entered into lease agreements with the Underlying Plaintiffs that contain a provision which states: "In the event we file a summary ejectment Action against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs)." (*Id.* at ¶ 24.)

12.    The Underlying Complaint further alleges in Paragraphs 25-33:

a.    The lease agreements immediately identify and describe three fees: a Complaint Filing Fee, a Court Appearance Fee, and a Second Trial Fee. (*Id.* at ¶ 25.)

b.    The Complaint Filing Fee, Court Appearance Fee, and the Second Trial Fee are the same fees described in N.C.G.S. § 42-46 (e) through (g). (*Id.* at ¶ 26.)

c.    The 'late fees, attorney's fees, and any applicable court costs' listed in the lease are separate and apart from the Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee. (*Id.* at ¶ 27.)

d.    Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or around the 16th date of any given month to pay filing fees ('Filing Fees'), sheriff service fees ('Service

Fees'), and attorneys' fees ('Attorneys' Fees') (collectively, the Filing Fees, Service Fees and Attorneys' Fees are referred to as the 'Eviction Fees') in addition to the 'Complaint-Filing Fee' purportedly allowed pursuant to §42-46(e) (herein described as the ('Collection Policy'). (*Id.* at ¶ 28.)

e.  Eviction Fees are additional fees separate and apart from the ones expressly authorized by N.C.G.S. §42-46. Instead, Eviction Fees constitute the 'attorney's fees, and any applicable court costs' described in the lease. (*Id.* at ¶ 29.)

f.  Eviction Fees are fees set by the North Carolina Legislature for filing a complaint in summary ejectment and for service of process by a sheriff, and Defendants' attorneys' fees for filing an eviction. (*Id.* at ¶ 30.)

g.  Upon information and belief, Defendants entered into a legal services agreement with a law firm that charges a flat fee per eviction. Upon information and belief, this legal services agreement limits the scope of the law firm's representation to only seeking possession of the apartment premises on behalf of Defendants and not any money owed. (*Id.* at ¶ 31.)

h.  Throughout the Relevant Time Period, the Filing Fees were $96.00 and the Service Fees were $30.00. (*Id.* at ¶ 32.)

i.  When a tenant fails to make a full and complete rental payment, or maintains an account ledger balance in excess of $0.00 after the 13th day of any given month, Defendants cause certain written letters or emails to be delivered to the tenant stating that if a tenant does not pay by the 16th of the month, and 'legal action is necessary, any expenses we incur will be charged to your account' (hereinafter 'Initial Collection Letter'). (*Id.* at ¶ 33.)

13.  The Underlying Complaint alleges at length and in detail how the Defendants allegedly engaged in unlawful and unfair debt collection practices through their efforts to collect upon the "Eviction Fees" described therein, including but not limited to, through requiring tenants to pay Eviction Fees "even if: (a) the complaint in summary ejectment had not yet even been filed;

(b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders the Eviction Fees to be assessed against Defendants." (*Id.* at ¶ 37.)

14.     The Underlying Complaint does not allege that the Underlying Plaintiffs were in fact wrongfully evicted from the leased premises.

15.     The Underlying Complaint does not allege that the Defendants wrongfully entered into the leased premises of any Underlying Plaintiff.

16.     The Underlying Complaint does not allege that the Defendants invaded the right of private occupancy of any Underlying Plaintiff.

17.     Count I of the Underlying Complaint alleges that the Eviction Fees charged by the Defendants were separate from and in excess of the amount allowed under N.C.G.S. §42-46 and are in violation of North Carolina law. (*Id.* at ¶¶ 65-70.)

18.     Count II of the Underlying Complaint alleges that the "Complaint Filing Fee" charged by the Defendants were assessed against the Underlying Plaintiffs prior to filing applicable complaints for summary ejectment, and were therefore a violation of North Carolina law. (*Id.* at ¶¶ 71-79.)

19.     Count III of the Underlying Complaint alleges that the Defendants violated the North Carolina Debt Collection Act ("NCDCA") by their actions in assessing, collecting, attempting to collect Eviction Fees and Complaint Filing Fees in violation of the NCDCA, and by threatening to take actions that the Defendants could not lawfully take under the NCDCA. (*Id.* at ¶¶ 80-98.)

20.     Count IV of the Underlying Complaint alleges that the debt collection practices of the Defendants as alleged in the Underlying Complaint violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §75-1.1, *et seq.* (*Id.* at ¶¶ 99-106.)

21.     Counts V and VI of the Underlying Complaint seek declaratory and injunctive relief in connection with the Defendants debt collection and eviction practices as alleged in the Underlying Complaint. (*Id.* at ¶¶ 107-119.)

22.     The Underlying Action seeks, *inter alia*, a declaration that the Defendants' actions violated the Underlying Plaintiffs' rights under N.C.G.S. §§ 75-54, 75-55, or in the alternative, N.C.G.S. § 75-1.1. (*Id.*, Prayer for Relief, ₱ 4.)

23.     The Underlying Complaint seeks a declaration that lease agreements used by the Defendants are contrary to N.C.G.S. § 42-46 and are void as against public policy. (*Id.*, Prayer for Relief, ₱ 5.)

24.     The Underlying Complaint seeks to enjoin the Defendants from collecting or attempting to collect any "Complaint Filing Fee" or "Attorneys' Fees" from the Underlying Plaintiffs. (*Id.*, Prayer for Relief, ₱₱6-8.)

25.     The Underlying Complaint seeks an award of compensatory damages, statutory damages, punitive damages, treble damages, attorneys' fees, and costs for the Underlying Plaintiffs, costs, trial by jury, and any other proper relief. (*Id.*, Prayer for Relief, ₱₱ 9-18.)

26.     The Underlying Action does not seek to reinstate the lease of any Underlying Plaintiff.

27.     The Underlying Action does not seek to return possession of any leased premises to the Underlying Plaintiffs.

28.     Cross Creek tendered the defense of the Underlying Action to Seneca.

29.     Seneca issued a Reservation of Rights letter to Cross Creek, reserving Seneca's rights under the Policy, including but not limited to its rights pertaining to the duty to defend and/or indemnify Cross Creek for damages related to the Underlying Action (the "Cross Creek ROR").

A true and accurate copy of the Cross Creek ROR is attached hereto as **EXHIBIT C** and is incorporated herein by reference as if fully restated herein.

30.     Subject to the Cross Creek ROR, Seneca extended a defense to Cross Creek for the Underlying Action.

31.     Seneca continues to defend Cross Creek in the Underlying Action.

32.     After initially tendering its defense to Hanover Insurance Company, Blue Ridge tendered the defense of the Underlying Action to Seneca.

33.     Seneca issued a Reservation of Rights letter to Blue Ridge, reserving Seneca's rights under the Policy, including but not limited to its rights pertaining to the duty to defend and/or indemnify Blue Ridge for damages related to the Underlying Action (the "Blue Ridge ROR"). A true and accurate copy of the Blue Ridge ROR is attached hereto as **EXHIBIT D** and is incorporated herein by reference as if fully restated herein.

34.     Subject to the Blue Ridge ROR, Seneca extended a defense to Blue Ridge in the Underlying Action.

35.     Seneca continues to defend Blue Ridge in the Underlying Action.

36.     The preamble to the CGL Coverage Form of the Policy (the "CGL Form") provides:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words 'we', 'us' and 'our' refer to the company providing this insurance.
>
> The word 'insured' means any person or organization qualifying as such under Section **II** – Who Is an Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

(Exhibit A, Form CG 00 01 04 13, p. 1 of 16.)

37.     The Policy, in relevant part, includes coverage for "Personal and Advertising Injury." (*Id.*, p. 6-7 of 16)

38.     The Personal and Advertising Insuring Agreement provides as follows:

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or 'suit' that may result. But:

        **(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)**     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.**     **[As amended by Form CG 21 44 04 17]** This insurance applies to 'personal and advertising injury' caused by an offense committed in the 'coverage territory' but only if:

        **(1)**     The offense arises out of your business:

            **(a)**     Performed on the premises shown in the Schedule; or

            **(b)**     In connection with the project or operation shown in the Schedule; and

        **(2)**     The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the 'personal and advertising injury' is caused by:

**(1)**     False arrest, detention or imprisonment; or

**(2)**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

(*Id.*, p. 6 of 16, as amended by Form CG 21 44 04 17, pp. 1-2 of 3.)

39.     Coverage B – Personal and Advertising Injury is subject to the following exclusions, among others:

**2.     Exclusions**

This insurance does not apply to:

**a.     Knowing Violation Of Rights Of Another**

'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'

**b.     Material Published With Knowledge Of Falsity**
'Personal and advertising injury' arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.     Material Publishes Prior To Policy Period**
'Personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

(*Id.*, p. 6 of 16.)

40.     The Policy defines the term "Personal and Advertising Injury" as follows:

## SECTION V – DEFINITIONS

**14.** 'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your 'advertisement'; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

(*Id.*, p. 15 of 16 (Definition of personal and advertising injury)).

41. The Policy also defines the term "suit" to mean "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged…" (*Id.*, p. 16 of 16 (Definition of suit)).

42. The Complaint does not allege "bodily injury" or "property damage" as those terms are defined in the Policy. Accordingly, Coverage A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY ("Coverage A") does not apply to any of the allegations of the Underlying Complaint and Seneca has no duty to defend or indemnify the Defendants pursuant to Coverage A. (See *id.*, pp. 1-6 of 16.)

43.     A controversy of a justiciable nature presently exists among the Parties such that Seneca seeks declarations by this Court, so that Seneca may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

## FIRST REQUEST FOR DECLARATORY JUDGMENT
### (The Underlying Complaint Does Not Allege "Personal and Advertising Injury")

44.     Seneca incorporates the preceding and following paragraphs of this Complaint for Declaratory Judgment and all Exhibits thereto by reference as if fully restated herein.

45.     The Underlying Action does not allege any "personal and advertising injury" to which Coverage B – Personal and Advertising Injury Liability applies.  (*Id.*, p. 6 of 16.)

46.     Specifically, the Underlying Action does not allege "false arrest, detention or imprisonment," as those terms are used in the Policy definition of "personal and advertising injury."  (*Id.*, p. 15 of 16.)

47.     Specifically, the Underlying Action does not allege "malicious prosecution" as that term is used in the Policy definition of "personal and advertising injury."  (*Id.*.)

48.     Specifically, the Underlying Action does not allege "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor as those terms are used in the Policy definition of "personal and advertising injury."  (*Id.*, p. 15 of 16.)

49.     Specifically, the Underlying Action does not allege "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" as those terms are used in the Policy definition of "personal and advertising injury."  (*Id.*, p. 15 of 16.)

50.     Specifically, the Underlying Action does not allege "oral or written publication, in any manner, of material that violates a person's right of privacy" as those terms are used in the Policy definition of "personal and advertising injury." (*Id.*, p. 15 of 16.)

51.     Specifically, the Underlying Action does not allege "the use of another's advertising idea in your 'advertisement'" as those terms are used in the Policy definition of "personal and advertising injury." (*Id.*, p. 15 of 16.)

52.     Specifically, the Underlying Action does not allege "infringing upon another's copyright, trade dress or slogan in your 'advertisement'" as those terms are used in the Policy definition of "personal and advertising injury." (*Id.*, p. 15 of 16.)

53.     Seneca has no duty to defend or indemnify the Defendants against any "suit" seeking damages for actions of the Defendants to which the Policy does not apply. (*Id.*)

54.     As the Underlying Complaint does not allege an offense constituting "Personal and advertising injury" as that term is defined in the Policy, the allegations of the Underlying Complaint do not trigger the Insuring Agreement for "Personal and advertising injury" coverage under the Policy, and therefore, Seneca has no duty to defend or indemnify the Defendants in the Underlying Action.

55.     Accordingly, Seneca prays that this Court declare that Seneca has no duty to defend or indemnify the Defendants in the Underlying Action on the ground that the Underlying Action does include any allegations of "Personal and Advertising Injury" to which the Policy would apply.

## SECOND REQUEST FOR DECLARATORY JUDGMENT
### ("Offenses" That Occurred Prior To The Policy Period Fall Outside The Insuring Agreement For "Personal and Advertising Injury" Liability)

56.     Seneca incorporates the preceding and following paragraphs of this Complaint for Declaratory Judgment and all exhibits thereto by reference as if fully restated herein.

57. The Policy was effective from January 15, 2018, to January 15, 2019. (Exhibit A, Commercial General Liability Declarations, Form CG DS 01 10 01, p. 1 of 7.)

58. The Policy was the first issuance of the Policy to Cross Creek, and was not a renewal of a prior policy.

59. Coverage B – Personal and Advertising Injury applies only to "personal and advertising injury" that was caused by an offense committed during the policy period. (Exhibit A, Form CG 00 01 04 13, as amended by Form CG 21 44 04 17, pp. 1-2 of 3.)

60. The Underlying Complaint contains allegations of actions or conduct by the Defendants that occurred prior to the inception of the Policy, including but not limited to allegations such as the following:

     a.    "On several occasions, including [on] or about October 13, 2017 and January 15, 2017, McMillan received the Initial Collection Letters …" (Exhibit B at ¶ 65.)

     b.    "On at least two (2) occasions, including on December 22, 2017 and January 19, 2018, Defendants placed the Eviction Fees on McMillan's ledger …" (Exhibit B at ¶ 68.)

61. Even if the Underlying Complaint contained allegations of one or more of the offenses identified in the Policy that constitute "personal and advertising injury" (which Seneca expressly contests and denies), the Policy, by its express terms, would not apply to any damages caused by actions of the Defendants that occurred outside of the effective Policy Period, from January 15, 2018, to January 15, 2019.

62. Accordingly, Seneca prays that this Court declare that the Policy does not apply "offenses" that were not committed during the Policy Period.

## THIRD REQUEST FOR DECLARATORY JUDGMENT
### (Even if the Complaint Alleges Personal and Advertising Injury, Policy Exclusions Apply)

63. Seneca incorporates the preceding and following paragraphs of this Complaint for Declaratory Judgment and all Exhibits hereto by reference as if fully restated herein.

64. The Policy excludes coverage under Coverage B – Personal and Advertising Injury when such injury is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (Exhibit B, Form CG 00 01 04 13, p. 6 of 16, Exclusion 2.a.)

65. The Policy excludes coverage under Coverage B – Personal and Advertising Injury when such injury arises "out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity." (*Id.*, Exclusion 2.b.)

66. The Policy excludes coverage under Coverage B – Personal and Advertising Injury when such injury arises "out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period." (*Id.,* Exclusion 2.c.)

67. The Policy excludes coverage under Coverage B – Personal and Advertising Injury when such injuries arise "out of a criminal act committed by or at the direction of the insured." (*Id.*, Exclusion 2.d.)

68. The Policy excludes coverage under Coverage B – Personal and Advertising Injury for injuries "for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement." (*Id.*, Exclusion 2.e.)

69. The Policy excludes coverage under Coverage B – Personal and Advertising Injury for injuries that arises "out of a breach of contract…" (*Id.*, Exclusion 2.f.)

70.     Even if the Underlying Complaint contained allegations of one or more of the offenses identified in the Policy that constitute "Personal and advertising injury", which Seneca expressly contests and denies, the Policy's Exclusions for "Personal and advertising injury" preclude coverage for the Underlying Complaint to the extent that it alleges the Defendants acted "with the knowledge that the act would violate the rights of another" or "with knowledge of its falsity." (*Id.*, Exclusion 2.a.)

71.     By way of example and not an exclusive list, the Underlying Complaint alleges that the Defendants violated North Carolina law by "collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations…" (Exhibit B at ¶ 91.)

72.     By way of example and not an exclusive list, the Underlying Complaint goes on to allege that the Defendants' conduct in derogation of North Carolina law was "willful." (*Id.* at ¶ 96.)

73.     By way of example and not an exclusive list, the Underlying Complaint further alleges that the Defendants violated North Carolina law by:

> (a) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiffs and each member of the class; (b) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy of North Carolina and the express statutory provisions of N.C.G.S. § 42-46; (c) utilizing false representations and deceptive measures to collect or attempt to collect Eviction Fees which are unlawful; (d) undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff; and (e) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law.

(*Id.* at ¶ 102.) The Underlying Complaint contends these actions "were done willfully, or with the conscious disregard" of the Underlying Plaintiffs' rights. (*Id.* at ¶ 103.)

74. Other allegations of the Underlying Complaint allege actions that are excluded by one or more of the exclusions identified above.

75. In light of the Underlying Complaint's allegations, Seneca prays that this Court declare that the Policy does not apply to any "personal and advertising injury" that falls within any of the Policy exclusions.

**FOURTH REQUEST FOR DECLARATORY JUDGMENT**
**(Seneca's duty, if any, to indemnify the Underlying Defendants is limited to "Offenses" that occurred at The Property Insured By Seneca)**

76. Seneca incorporates the preceding and following paragraphs of this Complaint for Declaratory Judgment and all Exhibits hereto by reference as if fully restated herein.

77. The Policy's Personal and Advertising Injury coverage does not apply to "offenses" that arise out of the insured's business if that business is not performed on the premises identified in the Schedule to the Policy's Commercial General Liability Declarations. (*See* Exhibit A, Form CG 00 01 04 13, p. 6 of 16, as amended by Form CG 21 44 04 17, pp. 1-2 of 3.)

78. The Underlying Complaint's allegations pertain to an apartment complex alleged to be owned by "BRC Cross Creek, LLC d/b/a Legacy at Cross Creek and/or Fayetteville Cross Creek, LLC d/b/a Legacy at Cross Creek" located in Fayetteville, North Carolina. (Underlying Complaint at ¶ 3.)

79. Upon information and belief, the Legacy at Cross Creek apartment complex that is the subject of the Underlying Action is located on Castle Rising Road in Fayetteville, North Carolina.

80. Upon information and belief, the Underlying Plaintiffs are seeking, or may seek, in the Underlying Action to recover damages from the Defendants in connection with similar activities at as many as 39 or more other properties or premises that are not identified in the Schedule to the Policy's Commercial General Liability Declarations.

81. Under the provisions of the Policy, Seneca has no obligation to indemnify the Defendants in the Underlying Action, or any other action, for Personal and Advertising Injury damages in connection with premises that are not identified in the Schedule to the Policy's Commercial General Liability Declarations.

82. Accordingly, Seneca prays that this Court declare that it has no obligation under the Policy to indemnify the Defendants in the Underlying Action for any damages for Personal and Advertising Injury in connection with premises not identified in the Schedule to the Policy's Commercial General Liability Declarations.

## FIFTH REQUEST FOR DECLARATORY JUDGMENT
**(Seneca's duty, if any, to indemnify Blue Ridge is limited to "Offenses" that occurred at The Property Insured By Seneca)**

83. Seneca incorporates the preceding and following paragraphs of this Complaint for Declaratory Judgment and all Exhibits hereto by reference as if fully restated herein.

84. As an additional insured under the Policy, Defendant Blue Ridge's rights under the Policy are no greater than the rights of the named insured, Defendant Fayetteville Cross Creek.

85. The Policy's Personal and Advertising Injury coverage does not apply to offenses that arise out of the insured's business if that business is not performed on the premises identified in the Schedule to the Policy's Commercial General Liability Declarations. (*See* Exhibit A, Form CG 00 01 04 13, p. 6 of 16, as amended by Form CG 21 44 04 17, pp. 1-2 of 3.)

86.     The Underlying Complaint's allegations pertain to an apartment complex alleged to be owned by "BRC Cross Creek, LLC d/b/a Legacy at Cross Creek and/or Fayetteville Cross Creek, LLC d/b/a Legacy at Cross Creek" located in Fayetteville, North Carolina.  (Underlying Complaint at ¶ 3.)

87.     Upon information and belief, the Legacy at Cross Creek apartment complex that is the subject of the Underlying Action is located on Castle Rising Road in Fayetteville, North Carolina.

88.     Upon information and belief, the Underlying Plaintiffs are seeking, or may seek, in the Underlying Action to recover damages from Defendant Blue Ridge in connection with similar activities at as many as 39 or more other properties or premises other than those identified in the Schedule to the Policy's Commercial General Liability Declarations.

89.     Under the provisions of the Policy, Seneca has no obligation to indemnify Defendant Blue Ridge in the Underlying Action, or any other action, for Personal and Advertising Injury damages in connection with premises that are not identified in the Schedule to the Policy's Commercial General Liability Declarations.

90.     Accordingly, Seneca prays that this Court declare that it has no obligation under the Policy to indemnify Defendant Blue Ridge in the Underlying Action for any damages for Personal and Advertising Injury in connection with "offenses" that occurred at premises not identified in the Schedule to the Policy's Commercial General Liability Declarations.

## SIXTH REQUEST FOR DECLARATORY JUDGMENT
### (Seneca has no duty to defend Defendant Blue Ridge for "offenses" that occurred at properties not insured by Seneca)

91.     Seneca incorporates the preceding and following paragraphs of this Complaint for Declaratory Judgment and all Exhibits hereto by reference as if fully restated herein.

{01944440.DOCX }

19

92.     As an additional insured under the Policy, Defendant Blue Ridge's rights under the Policy are no greater than the rights of the named insured, Defendant Fayetteville Cross Creek.

93.     The Policy provides that Blue Ridge is an Insured under the following policy provision: "Each of the following is also an insured: … b. Any person … or any organization while acting as *your* real estate manager." (*See* Exhibit A, Form CG 00 01 04 13, p. 10 of 16) (emphasis added).

94.     The Policy defines the term "your" to refer to the "Named Insured shown in the Declarations." (*See* Exhibit A, Form CG 00 01 04 13, p. 1 of 16).

95.     The Personal and Advertising Insuring Agreement provides as follows:

> **b.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or 'suit' that may result. But:
>
> > **(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> >
> > **(2)**     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> **b.**     **[As amended by Form CG 21 44 04 17]** This insurance applies to 'personal and advertising injury' caused by an offense committed in the 'coverage territory' but only if:
>
> > **(1)**     The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the 'personal and advertising injury' is caused by:

**(2)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

(*Id.*, p. 6 of 16, as amended by Form CG 21 44 04 17, pp. 1-2 of 3.)

96. The Underlying Plaintiffs are seeking Class Certification for their suit.

97. Upon information and belief, the potential class action would involve as many as 40 or more total properties for which Blue Ridge serves as a "property manager."

98. Seneca has no duty to defend Blue Ridge under the provisions of the Policy for any "offense" that arises out of Blue Ridge's "business" performed at premises other than the premises shown in the Schedule referenced in the Personal and Advertising Injury Insuring Agreement.

99. To the extent Plaintiff's suit is certified as a class action, and to the extent Plaintiff is allowed to pursue damages resulting from Blue Ridge's "business" performed at premises other than premises insured under the Policy, Plaintiff's claims may then encompass activities at premises for which Seneca would have no obligation to indemnify Blue Ridge.

100. Accordingly, Seneca prays that this Court declare that it has no obligation under the Policy to defend Defendant Blue Ridge in the Underlying Action for any damages for Personal

and Advertising Injury in connection with alleged "offenses" that occurred at premises not identified in the Schedule to the Policy's Commercial General Liability Declarations.

**WHEREFORE,** Plaintiff Seneca respectfully prays that this Court enter an Order ADJUDGING, ORDERING and DECREEING that:

1.     Seneca owes no duty to defend and/or indemnify Cross Creek in connection with the Underlying Action;

2.     Seneca owes no duty to defend and/or indemnify Blue Ridge in connection with the Underlying Action; and

5.     For such other and further relief as the Court may deem just and proper, including the Plaintiff's costs in this action.


December 11, 2019.


                                        MIDKIFF, MUNCIE, & ROSS, P.C.

                                        /s/ Amy H. Wooten
                                        Amy H. Wooten
                                        N.C. State Bar No. 39762
                                        S.C. State Bar No. 100128
                                        1511 Sunday Drive, Suite 308
                                        Raleigh, N.C. 27607
                                        T: (984) 232-0201
                                        F: (984) 232-0307
                                        awooten@midkifflaw.com
                                        Counsel for Seneca Insurance Company, Inc.