IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SENECA INSURANCE COMPANY, INC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19cv1209 |
| FAYETTEVILLE CROSS CREEK, LLC and BLUE RIDGE PROPERTY MANAGEMENT, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Fayetteville Cross Creek, LLC ("Cross Creek") and Blue Ridge Property Management, LLC ("Blue Ridge") are owners and operators of an apartment complex in Fayetteville, North Carolina. (ECF No. 13-2 at 4.) They are also named defendants in a putative class-action lawsuit currently pending in North Carolina state court ("the underlying action"), *McMillan v. Blue Ridge Companies, Inc.*, No. 18-CVS-4991, alleging that they have violated multiple state laws in their rental agreements. (ECF No. 13 ¶¶ 1, 9.) Both companies have tendered their defenses of the underlying action to Seneca Insurance Company, Inc. ("Seneca"). (*Id.* ¶¶ 28, 32.)

Seneca has subsequently initiated the instant lawsuit against Defendants Cross Creek and Blue Ridge seeking a declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that the relevant insurance policy does not provide coverage to Defendants for the claims asserted in the underlying action and that, as a result, Seneca has no

duty to defend nor indemnify them. (*Id.* ¶¶ 1, 43, 45.) Now before the Court is a motion filed jointly by Defendants to dismiss Plaintiff's Amended Complaint without prejudice or, in the alternative, to stay this action until the underlying litigation is resolved. (ECF No. 14.) For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

In the underlying action, tenant plaintiffs allege that Cross Creek and Blue Ridge are liable for violating three state statutes: (1) the North Carolina Residential Rental Agreements Act, N.C. Gen. Stat. § 42–46; (2) the North Carolina Debt Collection Act, *id.* § 75-50, *et seq.*; and (3) the North Carolina Unfair and Deceptive Trade Practices Act, *id.* § 75-1.1, *et seq.* (ECF No. 13 ¶ 9.) They contend that Defendants engaged in "unlawful and unfair debt collection practices" through their "attempts to collect upon fees, penalties, and other improper charges, when such costs, fees, charges, and amounts are not owed and are expressly prohibited." (*Id.* ¶ 10 (quoting ECF No. 13-2 ¶ 1).)

Though Seneca acknowledges that the insurance policy at issue provides a duty to defend in some instances, (*Id.* ¶ 38 (quoting ECF No. 13-1 at 100)), it denies that such a duty exists with regards to the underlying action, (*id.* ¶¶ 42–43). More specifically, Seneca contends: (1) that the underlying complaint does not allege the type of injury covered by the policy; (2) that any offenses occurring prior to when the policy went into effect on January 15, 2018 fall outside of the agreement; (3) that multiple policy exclusions apply; and (4) that its obligation to indemnify extends only to offenses occurring on the property. (*Id.* at 14, 16, 17, 20, 21.)

Defendants Cross Creek and Blue Ridge, however, contend that "[a]ll of Seneca's claims are dependent on certain rulings that must be made by the state court in the Underlying

2

Litigation" and are thus not ripe for adjudication. (ECF No. 14 ¶ 4.) They additionally urge the Court to "exercise its discretionary authority under the Declaratory Judgment Act . . . to decline to hear the claims pled by Seneca at this time." (*Id.* ¶ 5.) Finally, in the alternative to an outright dismissal under Rule 12(b)(1), Defendants request the Court stay all of Seneca's claims "until the Underlying Litigation concludes." (*Id.* at 4.)

## II.    STANDARD OF REVIEW

Under Rule 12(b)(1), a party may seek dismissal based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the question of "whether [the claimant] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing subject matter jurisdiction belongs to the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). However, when evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III.    DISCUSSION

### A.    *Ripeness*

Defendants first argue that Plaintiff's claims are not ripe for adjudication and thus must be dismissed for lack of subject matter jurisdiction. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803,

Case 1:19-cv-01209-LCB-JLW   Document 22   Filed 03/24/21   Page 3 of 10

807 (2003) (citation and internal quotation marks omitted). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation and internal quotation marks omitted).

In evaluating ripeness, courts must consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (citing *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808). With regards to the first element, a case is "fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted). With regards to the second consideration, "hardship" may be "measured by the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank v. Off. of Thrift Supervision,* 976 F.2d 203, 208–09 (4th Cir. 1992).

In determining whether Plaintiff's claims meet the first element, the Court must differentiate between the duty to defend and the duty to indemnify. The duty to defend hinges on the facts as alleged in the underlying complaint. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 610 (N.C. 2010). Given that, in North Carolina,[1] the interpretation of language in an insurance policy is a question of law, *Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co.*, 372 F. Supp. 3d 296, 302 (M.D.N.C. 2019) (quoting *N.C. Farm Bureau*

---

[1] As a federal court sitting in diversity, this Court is bound to apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496–97 (1941). North Carolina generally follows the rule of *lex loci contractus*, meaning "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000). The applicable policy was issued in North Carolina. (*See, e.g.*, ECF No. 13-1-1 at 2.) Thus, the Court must interpret them according to North Carolina law.

4

*Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000)), a reviewing court simply compares the underlying complaint to the relevant policies to determine "whether the events as alleged are covered or excluded," *Harleysville*, 692 S.E.2d at 610. Accordingly, the Court finds that Plaintiff's requests with regards to the duty to defend are indeed fit for consideration. On the other hand, the duty to indemnify is ordinarily "measured by the facts [as] ultimately determined at trial," *id.*, and therefore the Court finds that this obligation is subject to the resolution of the underlying litigation and not yet fit for this Court to consider.

The second element the Court must consider—the hardship analysis—falls largely along the same lines. Plaintiff is currently funding Defendants' defense in the underlying litigation and the Court need not speculate as to whether a burden has been imposed. At the same time, the lack of final judgment in the underlying case makes the duty to indemnify one that cannot be determined at this time.

Therefore, the claims in this case invoking the duty to defend are questions of law which are independent of future contingencies and ripe for adjudication. Conversely, claims invoking the duty to indemnify will not be ripe until the facts are ultimately determined through a final disposition in the underlying court. The first three requests for declaratory judgment in Plaintiff's Amended Complaint either expressly invoke the duty to defend or otherwise base their arguments on the degree to which the allegations in the underlying complaint invoke a responsibility under the insurance policy at issue. (ECF No. 13 ¶¶ 57, 63, 73.) Requests Four and Five, on the other hand, specifically contend that Seneca has no duty to indemnify Defendants. (*See id.* at 20, 21.) Accordingly, the Court finds that Plaintiff's first three requests challenging a duty to defend are ripe for adjudication while the final two

requests, challenging only the obligation to indemnify, are not. However, in an effort to avoid piecemeal litigation, the Court also declines to dismiss Plaintiff's unripe claims at this time.

B.    *Appropriateness of Declaratory Judgment*

Defendants next argue that, even if the Court finds that the controversy is ripe, it should decline to exercise jurisdiction under the Declaratory Judgment Act because "it would serve no useful purpose, would result in piecemeal litigation, and would waste the Court's and parties' resources." (ECF No. 15 at 12.)

When a court decides whether to issue a declaratory judgment, it must ask two questions: "(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 168 (4th Cir. 1990) (citation and internal quotations omitted). When a controversy involves underlying state court litigation as is the case here, the Fourth Circuit has provided additional considerations that take into account issues of "federalism, efficiency, and comity." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). In addition to discouraging "procedural fencing" that would allow forum shopping and federal hearings in cases that might not otherwise be removable, the Fourth Circuit has "suggested" that a court might also consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts;
>
> (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and

6

(iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law."

*Id.*

Plaintiff seeks a declaratory judgment to determine whether it must continue to defend the underlying litigation and whether, ultimately, it must indemnify Defendants. With respect to the duty to defend claims that are currently ripe, a declaratory judgment would serve the useful purpose of clarifying whether Plaintiff is required under its policy to continue to pay the costs of the underlying litigation and ultimately could potentially end this litigation. *See N.C. Farm Bureau Mut. Ins. Co., Inc. v. Phillips*, 805 S.E.2d 362, 366 (N.C. Ct. App. 2017) ("Because the duty to defend may be broader than the duty to indemnify . . . if it fails, so too does the duty to indemnify."). As to the additional considerations provided by the Fourth Circuit with respect to the state claims, there is no evidence before this Court that would suggest that Plaintiff is engaging in any "procedural fencing" nor that the questions of federalism or comity are weighty.

Though Plaintiff, in its Amended Complaint, prays the Court to enter an Order finding that it has "no duty to defend" either Defendant, (ECF No. 13 at 23), there is no motion and consequently no briefing of this issue currently before the Court. The Court, however, declines to foreclose the future issuance of such an Order that might serve the purpose intended under the Declaratory Judgment Act.

C.    *Issuing a Stay*

Finally, Defendants urge the Court to "stay the Declaratory Judgment action until a final judgment has been entered in the underlying litigation" if the Court is disinclined to

Case 1:19-cv-01209-LCB-JLW   Document 22   Filed 03/24/21   Page 7 of 10

dismiss the claims altogether. (ECF No. 15 at 16.) This Court "has the inherent power to stay proceedings to achieve equity and to ensure the efficient management of its docket." *John & Jane Doe 2 v. Ortho-Clinical Diagnostics, Inc.*, 335 F. Supp. 2d 614, 633 (M.D.N.C. 2004) (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the [cases] on its docket with economy of time and effort for itself, for counsel, and for litigants.").

This power, however, is not unbounded. *Williford*, 715 F.2d at 127. Proper use of this authority requires the court to exercise its judgment "to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). Courts have identified these various factors as: (1) "the interests of judicial economy"; (2) the "hardship and equity to the moving party" in the absence of a stay; and (3) the "potential prejudice to the non-moving party" in the event of a stay. *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 462 (S.D.W. Va. 2013) (citation and internal quotation marks omitted). The burden rests on the party seeking the stay to "justify it by clear and convincing circumstances outweighing potential harm" to the opposing party. *Williford*, 715 F.2d at 127; *see Landis,* 299 U.S. at 255, (explaining that "if there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward").

Having decided that Plaintiff's requests for declaratory relief with regards to the duty to defend are ripe for adjudication, the Court next turns to whether it is appropriate to stay

Plaintiff's requests regarding the duty to indemnify rather than dismiss it. To begin, the Court finds that the interests of judicial economy weigh in favor of a stay. As Defendants point out, a resolution of this matter would likely lead to the litigation of many of the questions of fact that the underlying litigation is currently working to resolve. (*See* ECF No. 15 at 19.) There is also no evidence before the Court that a stay on these counts would be prejudicial to Plaintiff given that there is no final disposition in the underlying case and therefore no judgment that Plaintiff has been asked to satisfy. Accordingly, the Court concludes that a stay is appropriate with regards to Plaintiff's claims related to its duty to indemify.

## IV.    CONCLUSION

The Court finds that Plaintiff's claims dealing with the duty to defend are ripe for adjudication while its claims asking for relief from a duty to indemnify may only be resolved with the final disposition of the underlying litigation. In the interests of judicial economy, the Court will allow Plaintiff's first three requests for relief to proceed pending the filing of motions and briefs in support thereof while staying the final two requests until such questions are resolved either by a declaratory judgment in this Court or become ripe with the resolution of the underlying case.

Based on the above, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Without Prejudice or to Stay Plaintiff's First Amended Complaint for Declaratory Judgment, (ECF No. 14), is DENIED as it relates to Plaintiff's First, Second, and Third Requests for Declaratory Judgment related to the duty to defend.

9

IT IS FURTHER ORDERED THAT Defendants' Motion to Dismiss Without Prejudice or to Stay Plaintiff's First Amended Complaint for Declaratory Judgment, (ECF No. 14), is GRANTED to the extent that Plaintiff's Fourth and Fifth Requests for Declaratory Relief related to the duty to indemnify are hereby stayed.

This, the 24th day of March 2021.


/s/ Loretta C. Biggs
United States District Judge