# EXHIBIT A

**EXHIBIT A**

IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-160

No. 492A20

Filed 17 December 2021

ELIZABETH MCMILLAN and TIFFANY SCOTT

v.

BLUE RIDGE COMPANIES, INC., BLUE RIDGE PROPERTY MANAGEMENT, LLC, BRC CROSS CREEK, LLC d/b/a LEGACY AT CROSS CREEK, and FAYETTEVILLE CROSS CREEK, LLC d/b/a LEGACY AT CROSS CREEK, INC.

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order granting plaintiffs' motion for class certification entered on 11 June 2020 by Judge Rebecca Holt in the Superior Court in Cumberland County. Heard in the Supreme Court on 30 August 2021.

> *Milberg Coleman Bryson Phillips Grossman, PLLC, by Scott C. Harris and* Patrick M. Wallace*; and Edward H. Maginnis and Karl S. Gwaltney, for plaintiff-appellees.*
>
> *Cranfill Sumner, LLP, by Steven A. Bader and Richard T. Boyette, for defendant-appellant Blue Ridge Property Management, LLC.*

HUDSON, Justice.

¶ 1        In this case we consider whether the trial court erred by granting plaintiffs' motion to certify three classes for a class action lawsuit. Plaintiffs Elizabeth McMillan and Tiffany Scott are former tenants of residential apartments in Fayetteville, North Carolina, owned and managed by defendant Blue Ridge Property Management, LLC

(Blue Ridge). Plaintiffs brought a class action lawsuit against the defendants alleging violations of N.C.G.S. § 42-46 (North Carolina Residential Rental Agreements Act, or NCRRAA) and N.C.G.S. § 75-50 *et seq.* (North Carolina Debt Collection Act, or NCDCA). Specifically, they moved the trial court to certify three classes of certain fellow tenants: the "Collection Letter Class," the "Eviction Fee Class," and the "Complaint-Filing Fee Class." On 11 June 2020, the trial court granted plaintiffs' motion to certify all three classes. On 10 July 2020, Blue Ridge appealed the class certification order directly to this Court under N.C.G.S. § 7A-27(a)(4). Because we conclude that the trial court did not abuse its discretion, we affirm and remand for further proceedings.

## I.    Factual and Procedural Background

¶ 2        The NCRRAA, in relevant part, authorizes landlords to assess certain fees against defaulting tenants "only if . . . the landlord filed and served a complaint for summary ejectment and/or money owed, the tenant cured the default or claim, and the landlord dismissed the complaint prior to judgment." N.C.G.S. § 42-46(e) (2021). The NCDCA, in relevant part, broadly prohibits debt collectors from engaging in certain unauthorized practices, such as "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding" or "[f]alsely representing that an existing obligation of the consumer may be increased by the addition of [certain] fees." N.C.G.S. § 75-54(4), (6) (2021). Here, plaintiffs allege

that Blue Ridge violated these Acts by unduly threatening (via collection letter) and assessing eviction fees and complaint-filing fees against tenants behind on rent before summary ejection complaints had been filed and before summary ejectment proceedings were complete. The merits of these substantive allegations are not at issue here. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (cleaned up). The only question before the Court at this stage is whether the classes were properly certified, not whether the plaintiffs' claims will succeed. *See id.* at 177–78.

¶ 3        On 16 July 2018, plaintiffs filed a complaint as a putative class action against Blue Ridge and several related entities. Later, plaintiffs voluntarily dismissed the related entities from the suit pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure. Initially, plaintiffs alleged six claims for relief: (1) violation of N.C.G.S. § 42-46 (NCRRAA) (on behalf of all classes); (2) violation of N.C.G.S. § 42-46 (NCRRAA) (on behalf of the Complaint-Filing Fee Class); (3) violation of N.C.G.S. § 75-50 *et seq.* (NCDCA) (on behalf of all classes); (4) violation of N.C.G.S. § 75-1.1 *et seq.* (North Carolina Unfair and Deceptive Trade Practices Act, or UDTPA) (on behalf of all classes); (5) a petition for an injunction pursuant to N.C.G.S. § 1-485 *et seq.* (on behalf of the Complaint-Filing Fee Class); and (6) petition for declaratory judgment

pursuant to N.C.G.S. § 1-253 (on behalf of all classes). On 26 November 2018, Blue Ridge filed its answer, denying liability.

¶ 4    On 8 March 2019, Chief Justice Beasley designated this matter as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and assigned the matter to Judge Rebecca Holt.

¶ 5    On 15 May 2019, plaintiff Elizabeth McMillan filed a partial motion for judgment on the pleadings. On 20 May 2019, Blue Ridge filed a motion to dismiss plaintiffs' suit pursuant to N.C. R. Civ. P. 12(b)(6). On 18 November 2019, the trial court denied in part and granted in part the motion. In part, the court ruled that the collection of eviction fees and complaint-filing fees violated the NCRRAA, but denied the motion as to Blue Ridge's liability for sending collection letters under the NCDCA, leaving the matter to be tried. Also on 18 November 2019, the trial court denied in part and granted in part Blue Ridge's motion to dismiss. Specifically, the court dismissed claims four and five (UDTPA violation on behalf of all classes and the petition for an injunction on behalf of the Complaint-Filing Fee Class) but left the remaining four claims intact.

¶ 6    On 5 December 2019, Blue Ridge filed a motion for partial summary judgment. On 6 December 2019, plaintiffs filed a motion for partial summary judgment. That same day, plaintiffs filed a motion for class certification. On 11 June 2020, the court denied in part and granted in part plaintiffs' motion for partial summary judgment.

Specifically, the court ruled that Blue Ridge violated the NCRRAA and the NCDCA when it assessed eviction fees and complaint-filing fees against plaintiffs, and that the collection letters likewise violated the NCDCA. However, the court found that genuine issues of material fact remain as to whether the collection letters proximately caused actual injury to plaintiffs. Accordingly, the court denied plaintiffs' motion for summary judgment on this issue.

## II.    Standard of Review

¶ 7        This Court reviews a trial court's class certification order for abuse of discretion. *Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 209 (2016). "[T]he test for abuse of discretion is whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Frost v. Mazda Motor of Am., Inc.*, 353 N.C. 188, 199 (2000) (cleaned up). Within this general standard, when addressing a class certification order, this Court has recognized that conclusions of law are reviewed de novo, and findings of fact are considered binding if supported by competent evidence. *Fisher*, 369 N.C. at 209.

## III.    Analysis

¶ 8        Rule 23 of the North Carolina Rules of Civil Procedure authorizes class action lawsuits. Specifically, Rule 23 establishes that "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of

them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued." N.C.G.S. § 1A-1, Rule 23(a) (2019). "The party seeking to bring a class action under Rule 23(a) has the burden of showing that [certain] prerequisites to utilizing the class action procedure are present." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282 (1987) (footnote omitted).

¶ 9    These prerequisites are well established. *See, e.g.*, *Faulkenbury v. Tchrs.' & State Emps.' Ret. Sys.*, 345 N.C. 683, 697 (1997) (repeating the prerequisites for class certification established by *Crow*, 319 N.C. at 282–83); *Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 336–37 (2014) (same); *Fisher*, 369 N.C. at 209 (same). As an initial matter, the class representatives must demonstrate the existence of a class. *Crow,* 319 N.C. at 277. "A proper class exists 'when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members.' " *Fisher*, 369 N.C. at 209 (quoting *Crow*, 319 N.C. at 280).

¶ 10    In addition to this threshold requirement, "the class representatives must show: (1) that they will fairly and adequately represent the interests of all members of the class; (2) that they have no conflict of interest with the class members; (3) that they have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) that they will adequately represent members outside the state; (5) that class members are so numerous that it is impractical to bring them all before the

court; and (6) that adequate notice is given to all class members." *Id.* (cleaned up) (quoting *Faulkenbury*, 345 N.C. at 697).

¶ 11    Once a party seeking class certification meets these requirements, "it is left to the trial court's discretion whether a class action is superior to other available methods for the adjudication of the controversy." *Id.* (cleaned up).

> Class actions should be permitted where they are likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results. The usefulness of the class action device must be balanced, however, against inefficiency or other drawbacks. . . . [T]he trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23 or in [existing caselaw].

*Crow*, 319 N.C. at 284. Accordingly, "the touchstone for appellate review of a Rule 23 order . . . is to honor the 'broad discretion' allowed the trial court in all matters pertaining to class certification." *Frost*, 353 N.C. at 198.

¶ 12    Here, the trial court defined three classes as follows:

> ***The Collection Letter Class***: All tenants of Blue Ridge's Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiffs' Complaint through June 25, 2018 (b) resided in one of the apartments managed by Blue Ridge in North Carolina (c) were sent the Second Collection Letter that (d) threatened to charge Eviction Fees when such amounts could not be claimed by Blue Ridge.
>
> ***Eviction Fee Class***: All tenants of Blue Ridge's Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiffs' Complaint through June 25, 2018 (b) resided in one of the

apartments managed by Blue Ridge in North Carolina (c) were charged and (d) actually paid Eviction Fees prior to a North Carolina court awarding such Eviction Fees to Blue Ridge.

***The Complaint-Filing Fee Class***: All tenants of Blue Ridge's Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through June 25, 2018 (b) resided in one of the apartments managed by Blue Ridge in North Carolina (c) were charged a Complaint-Filing Fee before a complaint in summary ejectment was filed and served and paid it.

¶ 13     In support of its order certifying these classes, the trial court made the following findings of fact:

11. Blue Ridge provides property management services to owners of residential apartment complexes in North Carolina. Blue Ridge's property management services include the implementation of its General Collection Guidelines which require, among other things, that its on-site employees "must treat everyone consistently and that "[a]ll residents in the same situation must be treated the same."

12. On or after the 11th of the month, Blue Ridge employees send tenants who are delinquent with their rent a letter stating that continued nonpayment will result in "legal action" and that "[i]f legal action is necessary, any expenses we incur will be charged to your account" (Second Collection Letter). The "expenses identified in the Second Collection Letter are the same as Eviction Fees.

13. According to a stipulation signed by the parties, "Defendant Blue Ridge had a general policy to send templated written communications to the tenant. These written communications were known as the 'Notice to pay – 2nd Notice' and 'Notice to Pay – Final Notice.' " The

stipulation also agreed that "the text of any Notice to Pay – 2nd Notice . . . that were generated for particular tenants is substantively similar . . . ."

14. If a tenant remains delinquent, Blue Ridge would start the eviction process. The eviction process included a summary ejectment action being filed against the delinquent tenant. Blue Ridge would also charge Eviction Fees to a delinquent tenant's ledger. In some, but not all instances, Blue Ridge employees also charged tenants with an additional Complaint-Filing Fee equaling 5% of the tenants' monthly rent. At times, Blue Ridge posted the Complaint-Filing Fee to a tenant's ledger before a summary ejectment complaint was filed and served.

15. Blue Ridge considers that tenants owe the amounts set forth on their ledgers.

16. Plaintiffs McMillan and Scott were residents at a Blue Ridge-managed property, Legacy at Cross Creek Apartments in Fayetteville, North Carolina. Plaintiffs McMillan and Scott received Second Collection Letters and were charged with and paid Eviction Fees and Complaint-Filing Fees.

¶ 14    Blue Ridge points to three alleged errors in the trial court's class certification order: (1) error in certifying the Collection Letter Class; (2) error in certifying the Eviction Fee Class and the Complaint-Filing Fee Class; and (3) error in the superiority determination. For the foregoing reasons, we see no merit to any of these challenges.

## A. Collection Letter Class

¶ 15    We must first determine whether the trial court erred in certifying the Collection Letter Class. Blue Ridge contends that the trial court erred in certifying

this class for three reasons: (1) class qualification focuses on whether the class members were "sent" a collection letter, rather than whether they *"received"* the letter; (2) class certification is improper when liability depends on how a class member reacted to the letter; and (3) actual and statutory damages available to the class cannot be shown by a class-wide theory of generalized proof. We address each argument in turn.

¶ 16     First, Blue Ridge argues that the trial court erred in defining the Collection Letter Class as those tenants who were "sent" the collection letter, as opposed to those who "received" the collection letter. This distinction is significant, Blue Ridge argues, because any alleged common injury proximately caused by the collection letter would first depend on whether the tenant actually received the letter.

¶ 17     We disagree. The trial court acted within its broad discretion in inferring that for the purpose of certifying this class, a letter sent was a letter received. *See Parnell-Martin Supply Co. v. High Point Motor Lodge, Inc.*, 277 N.C. 312, 320–21, (1970) (holding that a stipulation that a notice letter was sent established prima facie that the notice was received). Ample evidence supports this inference. For instance: Blue Ridge has admitted that the collection letters were indeed sent; Blue Ridge has not identified any evidence tending to rebut the corresponding inference that the letters were received; Blue Ridge stipulated that "the number of individuals who *received* the [collection letters] are so numerous as to make it impracticable to bring them all

before the Court" (emphasis added); and the trial court found that the named plaintiffs had, in fact, "received" collection letters. This inference of receipt is further strengthened by the testimony of a Blue Ridge employee and witness that collection letters were not delivered by mail, but by direct email or hand-delivery to each tenant's door. Accordingly, for the purpose of our review, drawing this inference from the uncontroverted testimony and stipulations was well within the broad discretion of the trial court.

¶ 18      Second, Blue Ridge argues that the Collection Letter Class certification is improper because liability depends not only on whether each class member *received* the letter, but also on how each class member *reacted* to the letter. For instance, Blue Ridge argues, if a collection letter recipient did not read the letter, did not understand the letter, or was in such an unfortunate financial position that he or she could not adjust their financial decisions based on the letter, then the letter would not proximately cause an injury, thus undermining the commonality of the class.

¶ 19      Third and relatedly, Blue Ridge asserts that the Collection Letter Class certification was erroneous because actual and statutory damages available to the class cannot be shown by a class-wide theory of generalized proof, as required for class certification. Based on the subjective reaction argument noted above, Blue Ridge argues that any actual damages suffered by class members because of a collection letter are unique to each member, and therefore not susceptible to a class-wide theory

of generalized proof. Likewise, Blue Ridge contends that the statutory damages sought by plaintiffs under the NCDCA are not susceptible to a class-wide theory of generalized proof because the amount will vary based on the nature and extent of each class member's injury, and the court lacks objective criteria with which to calculate such damages. Accordingly, Blue Ridge argues that class certification here is improper.

¶ 20    These arguments mischaracterize the true nature of the alleged injury here, which is not grounded in an individualized subjective reaction and injury, but in a class-wide deprivation of statutory rights under the NCRRAA and NCDCA. As this Court recently noted in *Comm. to Elect Dan Forest v. Emps Pol. Action Comm.*:

> [O]ur courts have recognized the broad authority of the legislature to create causes of action, such as 'citizen-suits' and 'private attorney general actions,' even where personal, factual injury did not previously exist, in order to vindicate the public interest. In such cases, the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute. . . . The existence of the legal right is enough.

376 N.C. 558, 2021-NCSC-6, ¶ 71. Later, in his concurring opinion, Chief Justice Newby specifically noted the NCDCA as an example of a statute that "provid[es] for specified statutory damages without requiring the plaintiff to prove actual injury." *Id.* ¶ 96 (Newby, C.J., concurring).

¶ 21    Plaintiffs here allege precisely the type of injury contemplated by this Court in

*Forest* above: one that depends not on individualized harm, but on an informational injury and a deprivation of statutory rights. *Id.* ¶ 71; *see* N.C.G.S. § 75-56(b) (2021) ("Any debt collector who fails to comply with any provision of this Article with respect to any person is liable to such person in a private action . . . ."). As a result, the collection letters need not have caused each class member a personal, factual injury based on his or her subjective reaction to it, but only an informational injury based on alleged misrepresentations and misleading information contained in the letters, in violation of the statute.

¶ 22    Similarly, regarding damages, although different members of the class could indeed end up with different damages based on individual circumstances, these differences do not undermine the availability of a class-wide theory of generalized liability. Here, Blue Ridge stipulated that it "had a general policy to send templated written communications" to its tenants in forms "substantially similar" to the ones produced for this litigation. These admittedly uniform procedures pertained to the collection letters, eviction fees, and complaint-filing fees at issue here. At this preliminary stage where the only question regards the appropriateness of class certification, not the merits of plaintiffs' claims or extent of plaintiffs' damages, the uniformity of Blue Ridge's procedures establishes a sufficiently generalized theory of alleged injury. Accordingly, the trial court acted within its broad discretion in finding that "common issues of fact and law are both central for all class members and are

susceptible to class-wide proof."

¶ 23　　Therefore, we conclude that the trial court did not abuse its discretion in certifying the Collection Letter Class.

## B. Eviction Fee Class and Complaint-Filing Fee Class

¶ 24　　We must next determine whether the trial court erred in certifying the Eviction Fee Class and Complaint-Filing Fee Class, as defined above. Blue Ridge argues that findings of fact numbered 11 through 16 (quoted above) are insufficient to support the trial court's subsequent legal conclusions that "common issues of fact and law predominate over any individual issues" and that "[t]he common issues of fact and law are both central for all class members and are susceptible to class-wide proof." Further, Blue Ridge argues that the inadequacy of these findings prevents this Court from engaging in meaningful appellate review.

¶ 25　　For support, Blue Ridge points to *Nobles v. First Carolina Commc'ns, Inc.*, 108 N.C. App. 127 (1992), and *Elam v. William Douglas Mgmt., Inc.*, No. COA14-1377, 2015 WL 2374524 (N.C. Ct. App. May 19, 2015) (unpublished). In *Nobles*, the trial court summarily denied the plaintiffs' class certification motion without "specify[ing] which elements were lacking and [with] no other findings." 108 N.C. App. at 132. The Court of Appeals subsequently deemed the trial court's findings "inadequate to enable [the Court of Appeals] to determine whether the [trial] court's decision was based on competent evidence." *Id.* at 132–33. In *Elam*, the trial court provided five relatively

succinct findings of fact regarding the inferiority of a class action in comparison to alternative methods of adjudication, and thus denied plaintiffs' motion for class certification. 2015 WL 2374524 at *2. On appeal, the Court of Appeals found these findings of fact sufficient. *Id.* at *5.

¶ 26 Here, Blue Ridge asserts that—similarly to *Nobles* and in contrast to *Elam*— the trial court did not make sufficiently detailed findings of fact. Blue Ridge notes that the trial court's class certification order included only six relatively cursory findings of fact (quoted above) detailing Blue Ridge's uniform procedures for sending defaulting tenants collection letters and assessing eviction fees and complaint-filing fees. These findings, Blue Ridge argues, are insufficiently detailed to support the trial court's subsequent conclusions of law regarding the existence of the three classes and to allow this Court the opportunity for meaningful appellate review.

¶ 27 We agree the trial court's findings of fact are relatively succinct; but succinct does not necessarily mean inadequate. The trial court's findings of fact plainly describe Blue Ridge's procedures at issue, note the uniformity of their application, and establish that they were deployed on plaintiffs. Notably, Blue Ridge does not challenge the factual findings, and the subsequent conclusions of law are specifically tailored to reflect the practices described. Comparatively, these findings of fact are more extensive than those found inadequate in *Nobles*, and are far more comparable

to—and perhaps even *more* detailed than—those found adequate in *Elam*.[1] While there is no bright line establishing a minimum number of factual findings or a minimum level of detail that will be deemed adequate, we cannot conclude that the facts here are insufficient to support the trial court's subsequent legal determinations that "common issues of fact and law predominate over any individual issues" and that "[t]he common issues of fact and law are both central for all class members and are susceptible to class-wide proof." For the same reasons, we cannot find that the trial court's findings of fact are so deficient as to preclude this Court from engaging in meaningful appellate review.

¶ 28    In fact, the trial court's succinctness here acts to *support* class certification rather than to undermine it; that is, because Blue Ridge's procedures regarding the collection letters, eviction fees, and complaint-filing fees were admittedly uniform for all defaulting tenants, more detailed, tenant-specific factual findings are rendered unnecessary. Indeed, as noted within the trial court's findings of fact, Blue Ridge's own General Collection Guidelines require, among other things, that its employees "must treat everyone consistently" and that "[a]ll residents in the same situation must be treated the same." The trial court's findings of fact reflect this consistency.

¶ 29    Accordingly, we hold that the trial court did not abuse its discretion in

---

[1] Notably, *Elam* is an unpublished decision which does not constitute controlling legal authority.

certifying the Eviction Fee Class and the Complaint-Filing Fee Class.

## C. Superiority Determination

¶ 30    We must last determine whether the trial court erred in its determination that a class action is superior to other available methods of adjudication.

¶ 31    As noted above, after a party seeking class certification satisfies the prerequisites, the trial court must determine, in its discretion, "whether a class action is superior to other available methods for the adjudication of th[e] controversy….'" *Crow*, 319 N.C. at 284.

> Class actions should be permitted where they are likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results. The usefulness of the class action device must be balanced, however, against inefficiency or other drawbacks. . . . [T]he trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23 or in [existing caselaw].

*Id.* Accordingly, superiority determinations are reviewed for abuse of discretion. *See Fisher*, 369 N.C. at 209.

¶ 32    Here, the trial court stated the following:

> 28. The Court finds that here a class action is superior to all other available methods of adjudicating the controversy. There are relatively few evidentiary issues for the Court to decide and that, once decided, can be applied to the classes. If this action were not allowed to proceed as a class action, the same legal issues could be relitigated in potentially hundreds of individual cases in different courts throughout North Carolina, which could lead to inconsistent decisions. The benefits of litigating this case

as a class action overrides any drawbacks. Statutory damages in this case can be determined using objective criteria that is applicable class-wide, and the issues identified by Blue Ridge concerning ascertaining class members' identities can be determined administratively. Further, potential statutory damages are not out of proportion to the harm caused. Lastly, Plaintiffs affirmed at the hearing that they are not seeking emotional distress damages or punitive damages.

¶ 33     Blue Ridge challenges three conclusions within this determination: (1) that statutory damages can be measured using objective, class-wide criteria; (2) that identifying class members can be done through administrative means; and (3) that class certification is preferable when, as here, plaintiffs seek both statutory damages and attorneys' fees. We again see no error, and address each in turn below.

¶ 34     First, the trial court did not abuse its discretion in determining that statutory damages can be measured using objective, class-wide criteria. As noted above, when a statute creates a cause of action independent from a personal, factual, injury, "the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute." *Comm. To Elect Dan Forest*, 2021-NCSC-6, ¶ 72. The NCDCA is one such statute. *See id.* ¶ 96 (Newby, C.J., concurring). Accordingly, statutory damages here could be determined based on the generalized theory of alleged class-wide informational injuries and deprivation of statutory rights under the NCDCA.

¶ 35     Second, we cannot agree that the trial court acted unreasonably in concluding

that the identification of class members could be completed administratively and did not pose a significant impediment to class certification. Notably, class-member identification is only one of many factors that a trial court may consider within a superiority determination. *See Crow*, 319 N.C. at 284 ("[T]he trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23 or in [existing caselaw].").

¶ 36　　　　Here, based on the record before the trial court, the court had competent evidence that Blue Ridge produced ledgers of tenants that specifically identified those who were charged and paid eviction fees. Further, administrative class-member identification is supported by the precision with which the classes are defined (including use of the applicable date ranges and whether tenants were charged or "actually paid" the applicable fees) and the admitted uniformity with which Blue Ridge administered the letters and fees at issue. Although the trial court did not specify a method for class-member identification in its findings of fact, this does not amount to an abuse of discretion when it had competent evidence on which to base its conclusion that class-member identification could indeed be completed administratively.

¶ 37　　　　Third, we are not persuaded by Blue Ridge's claim that the trial court erred in its superiority determination because class certification is not preferred when, as here, the classes seek both statutory damages and attorneys' fees. While statutory

damages and attorneys' fees are among the many factors that a trial court may consider within a class action superiority determination, neither dispositively renders a certain cause of action per se unsuitable for class certification. *See Beroth Oil Co.*, 367 N.C. at 344 ("We generally agree that differences in the amount of damages will not preclude class certification so long as the [common] issue predominates") (cleaned up). Instead, the question is whether the calculation of damages is "not merely a collateral issue," but is so "inextricably tied" to the common, class-wide issue that it "is determinative of the [common] issue itself." *Id*. In such cases, differing statutory damages or attorneys' fees between class members may render the class action form inapt. *See id*.

¶ 38       Here, however, there is no indication, and Blue Ridge presents no argument, that differences in damages and fees are so inextricably tied to the alleged class-wide injury under the NCRRAA and NCDCA as to render the class action form inferior to other methods of adjudication. In fact, the trial court's superiority determination includes numerous findings to the contrary, including that there were "relatively few evidentiary issues"; that class certification would avoid "the same legal issues [being] relitigated in potentially hundreds of individual cases in different courts throughout North Carolina, which could lead to inconsistent decisions"; and that "[t]he benefits of litigating this case as a class action overrides any drawbacks." Accordingly, the trial court did not abuse its broad discretion in certifying the classes here despite

potential collateral differences in damages and fees.

## IV.    Conclusion

¶ 39        A trial court enjoys broad discretion in class certification, and honoring that discretion is the "touchstone" of appellate review of class certification orders. Here, we hold that the trial court did not abuse its discretion in certifying the Collection Letter Class, Eviction Fee Class, and Complaint-Filing Fee Class for a class action lawsuit. Accordingly, we affirm the trial court's class certification order and remand for further proceedings not inconsistent with this opinion.

AFFIRMED.